David KONKEL, Plaintiff-Respondent,

v.

TOWN OF RAYMOND, Defendant-Appellant.

Court of Appeals

*No. 80–529. Submitted on briefs February 18, 1981.
—Decided March 24, 1981.*
(Also reported in 305 N.W.2d 190.)

For the defendant-appellant the cause was submitted on the brief of *Thompson & Coates, Ltd.* of Racine.

For the plaintiff-respondent the cause was submitted on the brief of *Michael J. Spector* and *Joseph D. Masterson* of *Quarles & Brady* of Milwaukee.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J.   In October 1974, the Town of Raymond adopted a resolution banning the use of holding tanks

for residential sewage disposal. David Konkel sought and obtained a declaratory judgment finding the resolution contrary to state legislative policy and therefore invalid. Because under the proper statutory analysis the ordinance is not preempted by state law, we reverse.

The facts are undisputed. In 1973, the plaintiff, David Konkel, purchased unimproved land in the Town of Raymond. On October 14, 1974, the Town Board of Raymond adopted a resolution stating "there would be no holding tanks in the Town of Raymond for residential use." In 1977, Konkel requested the town's approval for installation of a holding tank system on his property. A septic tank system could not be built because of unsatisfactory soil percolation test results. In July 1978, after protracted negotiations, the town board rejected Konkel's request for a holding tank permit. In December 1978, the town board reaffirmed its stance against the use of holding tanks by adopting the following resolution:

(1) The costs of pumping and maintenance are very substantial and may be beyond the financial means of many prospective residents, which could create pollution and financial problems for such residents and the Town;

(2) The Town does not have sufficient personnel to properly police individual holding tanks scattered throughout the Town;

(3) It could lead to undesirable urban development throughout the largely rural areas of the Town; and

(4) If for any reason such holding tanks are later determined to be unsuitable for any reason, it may be financially prohibitive to resolve the problem with a public sewage system.

The Town therefore resolved:

That the Town Board of the Town of Raymond, Racine County, Wisconsin not grant its approval to the use of holding tank systems for sewage disposal for residential properties, except when reasonable [sic] required to resolve existing pollution problems.

Konkel then brought this action seeking the above resolution declared invalid.

The trial court granted summary judgment to Konkel. Summary judgment is appropriate where, as a matter of law, there are no material factual issues. *Wright v. Hasley,* 86 Wis.2d 572, 579, 273 N.W.2d 319, 323 (1979). Questions of law are properly decided on a motion for summary judgment. *Roe v. Larson,* 94 Wis.2d 204, 206, 287 N.W.2d 824, 825 (Ct. App. 1979), *rev'd on other grounds,* 99 Wis.2d 332, 298 N.W.2d 580 (1980). An appellate court shall reverse the trial court if a legal issue is incorrectly decided. *Prince v. Bryant,* 87 Wis.2d 662, 666, 275 N.W.2d 676, 678 (1979).

Konkel argues the ordinance contravenes state policy as expressed in sec. 145.02(2), Stats., and section H62 of the Wisconsin Administrative Code. He contends that regulation of plumbing and private sewage systems is a statewide concern. Therefore, the state authorization of holding tanks precludes any local prohibition.

Section 145.02(2), Stats., provides in part:

The department shall have general supervision of all such plumbing and shall after public hearing prescribe and publish and enforce reasonable standards therefor which shall be uniform and of state-wide concern so far as practicable.

The administrative regulations in effect when the town denied Konkel's request called for individual consideration of holding tank permits. Section H62.20(9)(a)(3), Wis. Adm. Code, required "[a] signed agreement between local government and owner to guarantee the pumping and transport of the holding tank contents" to a satisfactory disposal site. The regulations allowed the issuance of a holding tank permit only upon such an agreement. The issue before this court is whether the town's resolution is preempted by applicable statutory and regulatory language. This is a question of law.

The town contends the trial court failed to examine the ordinance in light of the standards set forth in *Wisconsin Association of Food Dealers v. City of Madison,* 97 Wis.2d 426, 293 N.W.2d 540 (1980). In that case, the supreme court addressed a city of Madison ordinance requiring the sale of milk in refillable containers. The court, in striking the ordinance down, adopted a three-prong test to be used when judging the validity of a municipal enactment: (1) whether express statutory language has withdrawn, revoked or restricted the municipality's power; (2) the probability that the challenged ordinance is logically inconsistent with state legislation, and (3) the probability that the challenged ordinance infringes the spirit of a state law or general policy of the state. *Id.* at 433, 293 N.W.2d at 544. The trial court implicitly addressed the three standards and found the resolution void. Upon a close examination of the question, we reach a different conclusion. Since the resolution's validity is purely a question of law, this court is not bound by the trial court's analysis or conclusion.

The first step in the *Food Dealers* test is whether express statutory language has withdrawn, revoked or restricted the municipality's power. Section 145.02(2), Stats., authorizes "reasonable standards" which should "be uniform and of state-wide concern *so far as practicable.*" (Emphasis added.) The reason we have added emphasis to the qualifying language of sec. 145.02(2), Stats., is because it recognizes that although plumbing is a statewide concern, complete uniformity is neither envisioned nor practical. A legislative determination that a matter is of statewide concern, although not conclusive, is entitled to great weight. *Menzer v. Village of Elkhart Lake,* 51 Wis.2d 70, 77–78, 186 N.W.2d 290, 294 (1971). Likewise, the legislative determination that mu-

nicipal discretion is allowed should be entitled great weight. Given the explicit recognition that situations may arise which cannot be treated uniformly, this court cannot conclude that sec. 145.02(2), Stats., has withdrawn, revoked or restricted the town's power to act.

The second prong of the *Food Dealers* analysis requires consideration of the probability that the resolution is logically inconsistent with sec. 145.02(2), Stats., and the applicable administrative regulations. As discussed above, sec. 145.02(2), Stats., acknowledges that total statewide uniformity is not feasible. The question then becomes whether the town's resolution creates a non-uniform condition logically inconsistent with the statute. We conclude that it does not.

Local ordinances may impose stricter standards than a similar state regulation so long as they do not conflict. *Fox v. City of Racine,* 225 Wis. 542, 545–46, 275 N.W. 513, 514–15 (1937). No conflict or logical inconsistency is present in this case. The municipality's involvement in a holding tank application is specifically required by Wis. Adm. Code, sec. H62.20(9). The municipality must ensure proper disposal of the holding tank wastes. Municipalities will not be equally equipped to handle that duty. The Town of Raymond's refusal to accept the responsibilities is foreseeable and consistent with the statute and regulations.

The final step in the *Food Dealers* analysis concerns the "probability that the challenged ordinance infringes the spirit of a state law or general policy of the state." *Wisconsin Association of Food Dealers, supra,* at 433, 293 N.W.2d at 544. Section 145.02(2), Stats., through the "so far as practicable" language, recognizes that the feasibility of a plumbing standard may differ in a rural township as opposed to a developed urban community. The spirit of the statute calls for flexibility. The *ad hoc*

approach implicit in the statute is reflected in department policy as described in the affidavit of Duane Strassman, a deputy in the Plumbing and Fire Protection Division of the Department of Health and Social Services. Strassman's affidavit stated:

2. The Wisconsin Administrative Code requries [sic] a signed agreement between the local municipality and the owner which provides a guarantee of disposal of the holding tank wastes.

3. The Department's position has been that some discretion is lodged in the municipality as to whether or not it wants to enter into such agreements.

. . .

6. The Department's experience with holding tanks has disclosed a history of abuse by the owners and an inability of some local governments to properly oversee the disposal of holding tank wastes.

It is clear that the department did not exert pressure on a municipality that felt unable to handle holding tank disposal. The department's position inevitably created non-uniform conditions throughout the state.

■ The primary function of the department is to safeguard the public health. Sec. 145.02(1), Stats. To protect that interest, the department chose to issue permits for a holding tank system only upon evidence that the local government was willing to accept ultimate responsibility for upkeep and proper disposal. Absent such a written agreement between the owner and municipality, the department would not issue a permit. The requirement of the written agreement of a town would be superfluous if the town were not afforded some discretionary input into the agreement. If a town feels unable to accept the responsibilities attendant to holding tanks, the safety of public health mandates that the system not be allowed. The town's refusal to agree to the holding tank conforms to the spirit of ch. 145.

Although not determinative of the present litigation, this court may take cognizance of legislative change. *See, e.g., Yanta v. Montgomery Ward & Co.*, 66 Wis.2d 53, 224 N.W.2d 389 (1974). The former practice of the department as reflected in the Strassman affidavit is now embodied in the Wisconsin Administrative Code, sec. H63. The proposed regulations which became effective January 1, 1981 were before the trial court as an exhibit to Strassman's affidavit.

Section H63.18(1), Wis. Adm. Code, like its predecessor section, states that "[t]he use of holding tank installations will be considered on an individual basis." However, subsection (2) now provides:

Holding tanks for new construction may be prohibited by county ordinance. If the county allows the use of holding tanks for new construction, then such use may be prohibited by city, village, or town ordinance. If a governmental unit prohibits holding tanks for new construction, then the governmental unit shall provide an appeal procedure to this prohibition. The county board, city council, village board or town board or the designated committee of such governmental unit, may grant variances to their holding tank prohibition. The county, city, village or town shall inform the department in writing of each variance.

The new regulations expressly authorize the town's action. The former, unofficial policy of the state has become an official part of the code. This court cannot ignore such direct evidence in assessing the propriety of the town's resolution.

Konkel argues the *Food Dealers* case is distinguishable because it dealt with injunctive relief. We disagree. *Food Dealers* should not be construed so narrowly. The plaintiffs in that case sought both declaratory relief (that the ordinance is invalid) and injunctive relief (enjoining enforcement of the ordinance). The analysis outlined by the court addressed the validity of the ordinance.

As such, it remains the controlling rationale for the present challenge.

Konkel relies on *Wisconsin's Environmental Decade, Inc. v. Department of Natural Resources,* 85 Wis.2d 518, 271 N.W.2d 69 (1978). In that case, a Madison ordinance banning chemical treatment for aquatic weeds in the Madison area lakes was invalidated. In Konkel's view, the court in *Wisconsin's Environmental Decade* held that a blanket prohibition of the chemical treatment was inconsistent with the legislative scheme which authorized the Department of Natural Resources, in its administrative discretion, to permit treatment. Konkel argues the present situation is no different: the town's blanket prohibition of holding tanks is inconsistent with the department's power to allow such tanks.

The fallacy in Konkel's analogy lies in the factual contexts of the two cases. *Wisconsin's Environmental Decade* dealt with control of water pollution, an area where "[t]he duties of the DNR are comprehensive, and its role in protecting state waters is clearly dominant." *Id.* at 527, 271 N.W.2d at 73. Furthermore, sec. 144.025(2)(i), Stats., expressly authorized DNR supervision of chemical treatment of state waters.

The present situation is markedly different. While effective sewage disposal is properly within the ambit of the department's jurisdiction, the statute allows for the flexibility which may be required by local conditions. Given the qualifying language found in sec. 145.02(2), Stats., the rationale of *Wisconsin's Environmental Decade* is not persuasive.

*By the Court.*—Judgment reversed.