Mr. George E. Meyer Secretary Department of Natural Resources 101 South Webster Street Madison, Wisconsin 53702
Dear Mr. Meyer:
You indicate that the Department of Natural Resources ("DNR"), in the exercise of its statutory authority, acquires, maintains and develops certain public access sites to state lands and waters for hunting, fishing and other outdoor recreational activities in order to benefit the general public, rather than to facilitate the internal operations of DNR as a state agency. You are primarily concerned about facilities constructed by DNR in order to afford the general public access to navigable lakes and streams. You ask whether construction by DNR at such sites is subject to local zoning requirements.
In my opinion, DNR is not subject to local zoning ordinances with respect to its construction of any building, structure or facility whose purpose is to assure the general public access to outdoor recreational areas, rather than to facilitate the internal operations of DNR as a state agency.
Construction of state buildings and facilities is a matter wholly of state concern and not subject to municipal regulation except as expressly provided by statute. See Milwaukee v.McGregor, 140 Wis. 35, 121 N.W.2d 642 (1909); Green County v.Monroe, 3 Wis.2d 196, 87 N.W.2d 827 (1958). Section 13.48 (13), Stats., subjects state construction to municipal regulation only under the following circumstances:
 APPLICATION OF LAWS, RULES, CODES, ORDINANCES AND REGULATIONS. (a) Except as provided in par. (c), every *Page 57 building, structure or facility that is constructed for the benefit of or use of the state or any state agency board commission or department shall be in compliance with all applicable state laws, rules, codes and regulations but the construction is not subject to the ordinances or regulations of the municipality in which the construction takes place except zoning, including without limitation because of enumeration ordinances or regulations relating to materials used, permits, supervision of construction or installation, payment of permit fees, or other restrictions.
Non-technical terms in section 13.48 (13) must be construed according to their ordinary and accepted meaning. Sec. 990.01, Stats. But the term "state" has a technical meaning and should be ascertained by reference to section 990.01 (40). Under the principle of noscitur a sociis, the meaning of the term "state" may also be ascertained by reference to the surrounding terms "state agency," "board," "commission" and "department." MidtownChurch of Christ v. City of Racine, 83 Wis.2d 72, 75 n. 4,264 N.W.2d 281 (1978). I therefore construe the terms "state," "state agency" and "department" in section 13.48 (13) as referring to the state as a unit of government, as opposed to its inhabitants. This construction comports with the provisions of section 990.01
(40).
The phrase "for the benefit of" accordingly must be construed with reference to the state as a unit of government. The fact that the state or one of its agencies may receive some incidentalbenefit from the construction of a facility is not determinative.Cf. State ex rel. Warren v. Nusbaum, 64 Wis.2d 314, 328,219 N.W.2d 577 (1974). Construction of the nature you describe is for the use of the general public, rather than for the use of DNR as a state agency. DNR has extensive statutory authority to acquire and develop all forms of property for public enjoyment. Sections23.09 (2)(d) and (10), 23.11 (2) and 31.14 (3)(c) permit DNR to acquire, develop and create access to property for such purposes as public recreation, the preservation of historic values *Page 58 
and natural wonders, hunting, trapping, fishing, public trails, forests, parks and waterways.
In addition, prior to 1973, the statute restated the common law principle that the state was not subject to local zoning and related requirements. See 67 Op. Att'y Gen. 251, 252 (1978). In 1973, the Legislature deviated from the common law by simply inserting the phrase "except zoning" into the preexisting statute. Ch. 90, sec. 2, Laws of 1973. The state therefore is still not subject to "without limitation because of enumeration, ordinances or regulations relating to materials used, permits, supervision of construction or installation, payment of permit fees, or other restrictions" of any nature whatsoever. Sec. 13.48
(13), Stats.
To the extent that it confers power upon a municipality and removes power from the state, the statute is in derogation of the common law and is therefore subject to a strict construction. SeeKranzush v. Badger State Mut. Cas. Co., 103 Wis.2d 56,307 N.W.2d 256 (1981). Statutes are not to be extended so as to impose any duty beyond that imposed by the common law unless the statute clearly and beyond any reasonable doubt expresses such a purpose by language that is clear, unambiguous and peremptory.Grube v. Moths, 56 Wis.2d 424, 437, 202 N.W.2d 261 (1972). This rule of strict construction has its strongest force when the state would be included in a law to its detriment so as to restrain or diminish any of the state's sovereign rights or interests. Wis. Vet. Home v. Div. Nurs. Forfeit. Appeals,104 Wis.2d 106, 310 N.W.2d 646 (Ct.App. 1981).
Because the language contained in section 13.48 (13) must be construed very narrowly, it is my opinion that the Legislature has never surrendered the state's common law immunity from zoning with respect to state construction of recreational facilities for the use and benefit of the general public, since such construction is not clearly "for the benefit or use of the state or any state agency, board, commission or department" within the meaning of that statute. *Page 59 
Even if state construction of recreational facilities for the use and benefit of the general public would otherwise be subject to municipal regulation under section 13.48 (13), it is my opinion that municipal regulation of facilities constructed by DNR in order to afford the general public access to navigable lakes and streams is preempted due to the existence of a comprehensive regulatory scheme established by the Legislature and by DNR in furtherance of its administration of the public trust. Under the public trust doctrine, the state owns the beds of its navigable lakes and streams in fee and in trust for the benefit of all the people, who as beneficiaries of that trust enjoy the rights of boating, hunting, fishing, swimming, skating and appreciation of scenic beauty. Muench v. Public ServiceComm., 261 Wis. 492, 53 N.W.2d 514, on reh., 55 N.W.2d 40 (1952);State v. Bleck, 114 Wis.2d 454, 465, 338 N.W.2d 492 (1983). DNR acts as the delegate of the state in its capacity as owner of navigable lake beds and trustee of navigable waters. It has promulgated administrative rules in furtherance of its administration of the public trust. Wisconsin Administrative Code section NR 1.90 (1) mandates that "[t]he public interest in the waters of this state and access to them shall be protected to the fullest extent authorized by the law."
Wisconsin Administrative Code section NR 1.90 (2)(a) provides in part:
 "Adequate access" exists when the general public has been provided with entry to a body of water to enjoy quality uses at a reasonable fee, if one is charged, considering the character and uses of the water. The following criteria must also be met:
 1. The public should be able to park within a reasonable walking distance of the body of water, given the character and use of the access, but in no case more than 1/4 of a mile from the water.
 2. For a body of water having uses involving boating, adequate car-trailer unit parking must be provided to ensure *Page 60 
that the existing or potential users are given an opportunity to park their vehicles within 1/4 of a mile from the water.
Wisconsin Administrative Code section NR 1.92 provides in part:
 Providing vehicular access to lakes and streams. . . .
 (2) PUBLIC ACCESS. Public access to navigable waters is defined as a way to such waters, publicly owned or under public control, reasonably direct and available to all by means of water, road, trail or otherwise through the privilege of crossing public or private lands without involving trespass.
 (3) LAND ACQUISITION. Subject to approval of the natural resources board, the department shall:
 (a) Acquire boat launching access to important stream systems.
 (b) Actively pursue acquisition on lakes having more than 1,000 acres of surface water.
 (c) Pursue acquisition on smaller lakes when the importance for recreational activities to the general public are such that the board determines it is desirable for the state to take action.
. . . .
 (6) GUIDELINES FOR PUBLIC ACCESS. In state acquisition for access . . . the following guidelines shall apply.
 (a) Each project, whether an aid project or state development, shall have a demonstrable public interest and need.
. . . .
 (c) For lakes of 50 or more acres and rivers, the parking capacity of an access site shall be in accord with the size of the lake or river. The general rule to be applied for *Page 61 
lakes shall be not more than one parking unit for each 10 acres of water.
. . . .
 (e) The primary objective of the state access aid program is to provide public access where needed and none exists. Where access exists but is inadequate, improvement will be considered as a lower priority.
Under these regulations, approval of the Natural Resources Board is required before public access can be granted. Wis. Admin. Code § NR 1.92 (1). These administrative code provisions have the force and effect of law. State ex rel. Staples v. DHSS, 115 Wis.2d 363,367, 340 N.W.2d 194 (1983); Law Enforce. Stds. Bd. v.Lyndon Station, 101 Wis.2d 472, 488, 305 N.W.2d 89 (1981).
In Oneida County v. Converse, 173 Wis.2d 78, 85,496 N.W.2d 124 (Ct.App. 1992), the court of appeals recently held that:
 A local ordinance is invalid if either (1) express statutory language has withdrawn, revoked or restricted the municipality's power to issue such ordinance, (2) the challenged ordinance is logically inconsistent with state legislation, or (3) the challenged ordinance infringes the spirit of a state law or general policy of the state.
The same three part test employed in Oneida County was applied by the supreme court to strike down a municipal ordinance which effectively prohibited DNR from authorizing chemical treatment of aquatic weeds. Wis. Environmental Decade Inc. v. DNR, 85 Wis.2d 518,534-35, 271 N.W.2d 69 (1978). Under these cases, a municipality may not zone so as to frustrate a comprehensive regulatory policy established by the Legislature.
Any infringement by a local unit of government upon a comprehensive regulatory scheme resulting in a determination by DNR that recreational access to lakes and streams should be granted to the general public would conflict with state law or *Page 62 
policy. The free and unobstructed management and use of the waters of the state is a matter of statewide concern. State v.Jackman, 60 Wis.2d 700, 711, 211 N.W.2d 480 (1973); Madison v.Tolzmann, 7 Wis.2d 570, 575, 97 N.W.2d 513 (1959). The supreme court long ago stated that DNR "must maintain pre-eminence in the control of navigable waters in this state." Dept. of NaturalResources v. Clintonville, 53 Wis.2d 1, 4, 191 N.W.2d 866
(1971). There is a "clear legislative pattern of vesting increasingly centralized authority over waters of the state in the DNR." Wis. Environmental Decade, Inc., 85 Wis.2d at 537.
Fond du Lac v. Empire, 273 Wis. 333, 77 N.W.2d 699 (1956) illustrates why the Legislature has preempted local zoning ordinances in those circumstances where DNR has determined that public access should occur. There, the town of Empire passed a series of ordinances requiring a permit from the town board before drilling a water well greater than six inches in diameter. The city of Fond du Lac purchased a tract within the town in order to drill twelve inch wells to augment its water supply and then brought a declaratory judgment action challenging the town's ordinances. Empire claimed that its ordinances were validly adopted to protect the area's water supply — a problem of peculiarly local concern. The court noted the existence of section 144.03, Stats. (1953), which granted the State Board of Health "general supervision and control over the waters of the state" and which also declared that "the public health, comfort, welfare and safety requires the regulation by the state of the use of subterranean waters of the state in the manner provided in this section." The court held that the legislative determination that water resources management required statewide regulation and control was entitled to "great weight" and that the primacy of statewide interests made the town ordinances invalid. Empire, 273 Wis. at 338. The court reached this conclusion even though it acknowledged that local concerns were also involved and even though the Legislature had neither *Page 63 
expressly preempted local regulation nor caused comprehensive regulations to be enacted at the state level.
In my opinion, a similar analysis would be applied where DNR is acting in its capacity as trustee of navigable waters. A municipal zoning ordinance cannot "deprive the public of equal and uniform use" of public waterways. See Wussow v. Gaida,251 Wis. 328, 331, 29 N.W.2d 42 (1947). Such an ordinance would "defeat [the] clear legislative purpose to establish the department as `the central unit of state government' with `general supervision and control over the waters of the state.'"Wis. Environmental Decade, Inc., 85 Wis.2d at 535-36 (citations omitted).
I am aware that a zoning ordinance "is not rendered invalid and constitutionally defective merely because it deals with a matter of state-wide concern." Wis. Environmental Decade Inc.,85 Wis.2d at 533. Cf. State ex rel. Michalek v. LeGrand, 77 Wis.2d 520,527-28, 253 N.W.2d 505 (1977). I also recognize that, under the public trust doctrine, some kinds of municipal regulation are permissible. See Village of Menomonee Falls v. DNR, 140 Wis.2d 579,601-02, 412 N.W.2d 505 (Ct.App. 1987); Capt. Soma Boat LineInc. v. Wisconsin Dells, 56 Wis.2d 838, 847, 203 N.W.2d 369
(1973). But "[t]he law is well established that where a state act fully covers a subject or the state otherwise manifests a purpose to establish a uniform state rule pertaining to it, conflicting local ordinances on the same subject are invalid to the extent of the conflict." Volunteers of America v. Village of Brown Deer,97 Wis.2d 619, 622, 294 N.W.2d 44 (Ct.App. 1980) (footnote omitted). A local regulation can be permitted to stand only where "there is nothing contradictory between the provisions of the statute and of the ordinance." Fox v. Racine, 225 Wis. 542, 547,275 N.W. 513 (1937).
In some circumstances, a municipality which has enacted an ordinance for a valid statutory purpose might be able to establish that it is "mov[ing] in the same direction . . . farther but not *Page 64 
counter to" DNR with respect to its administration of navigable waterways in trust for the public. Caeredes v.Platteville, 213 Wis. 344, 350, 251 N.W. 245 (1933). That issue was most recently discussed in Oneida County. There, the court of appeals acknowledged the authority delegated to municipalities under section 144.26 to enact shoreland zoning regulations, but nevertheless held that "municipalities may not disallow what the legislature has expressly licensed or authorized." Oneida County, 173 Wis.2d at 87. It then struck down a municipal ordinance which effectively prohibited the rebuilding of a boathouse because the ordinance was in conflict with an administrative rule enacted by DNR:
 In the instant matter, through NR 325.065, the legislature has expressly authorized an exemption for structures damaged by wind from the 50% requirement for rebuilding nonconforming structures. The county ordinance runs contrary to this. Denying the wind, vandalism or fire exemption is not merely going further than the state, but is acting counter to the state. The state regulation and the local ordinance are diametrically opposed within the narrow issue of rebuilding boat houses damaged by wind, vandalism or fire. The local ordinance is disallowing what the legislature has expressly licensed or authorized. We feel that it is crucial in this instance that the state, through the DNR, has affirmatively acted to exempt boathouses damaged by wind. That action made the ordinance and the state law in conflict and the two rules' relationship distinct from one where local governments have merely enacted stricter standards than the state. The Oneida County ordinance is therefore invalid to the extent that it denies the wind, vandalism or fire exemption.
Oneida County, 173 Wis.2d at 87.
I therefore conclude that DNR is not subject to local zoning ordinances with respect to its construction of any building, structure or facility whose purpose is to assure the general public *Page 65 
access to outdoor recreational areas, rather than to facilitate the internal operations of DNR as a state agency.
Sincerely,
 James E. Doyle Attorney General *Page 66